IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



"BM", a minor, by and through her )
Parents, WILBUR LEON MOSS and TAMMY )
S. MOSS, individually and on behalf )
of their daughter, )
                                   ) Case No. 3:09CV727
                                    )
                 Plaintiffs, )
                                    )
        v. )
                                    )
CHESTERFIELD COUNTY SCHOOL DISTRICT; )
DR. MARCUS J. NEWSOME, Superintendent )
Chesterfield County School District; )
and DAVID SOVINE, Principal Monacan )
High School; and CAROL MOORE, Assistant )
Principal Monacan High School, all )
in their official and individual )
capacities, )
                 Defendants. )

## MEMORANDUM AND OPINION

This matter is before the Court on the Defendants' MOTION FOR SUMMARY JUDGMENT (Docket No. 11). For the reasons set forth below, the motion will be granted.

### BACKGROUND

In this action, B.M., a minor female student in the Chesterfield County Public School System, acting through her parents, filed a Complaint with three counts, each of which is

predicated on the assertion that the defendants violated B.M.'s rights under the Fourteenth Amendment to the Constitution of the United States.[1] The three counts, in reality, are subsets of one claim for violation of the Fourteenth Amendment based on the alleged infringement of B.M.'s due process rights by the defendants in conducting an investigation into B.M.'s conduct in class, and in suspending her from school for 10 days as a result of that conduct. It also is alleged that the procedure used to guide investigation into student misconduct offend the Fourteenth Amendment.

The basic facts are simple. On October 31, 2007, during a Computer Graphics class, B.M. was observed by two other students performing oral sex on a male student. The teacher's view was obscured so he did not see the conduct. However, after the class, two students reported the incident to a school official who, in turn, reported it to Carol Moore, the Assistant Principal of the school. Thereafter, Moore undertook an investigation into the conduct and, in so doing, followed the school system's policy. Moore interviewed the teacher and several students, including the two who reported the misconduct. Those two

---

[1] There also was a claim by B.M.'s parents for violation of their due process rights, under the Fourteenth Amendment. That count has been previously dismissed.

students provided oral and written statements outlining the misconduct which they observed.

With this information in hand, Moore interviewed B.M., after first advising her that she was investigating a claim that B.M. had engaged in oral sex with a male student during the Computer Graphics class. B.M. first denied the misconduct but, according to affidavits, after Moore informed B.M. that she had been seen by two other students, B.M. admitted the misconduct and also provided Moore with a written statement in which she confirmed the verbal admissions. Moore also interviewed the male student involved, who confirmed that the misconduct had occurred. Moore suspended both B.M. and the male student for a period of 10 days.

Moore then wrote a letter to B.M.'s mother informing her of the status of the suspension and advised that a right to appeal the decision existed. The next day, B.M.'s parents appealed Moore's decision to the principal. The principal met with the parents, reviewed their position, reviewed Moore's investigative file, and upheld the suspension. Thereafter, the principal advised the parents of their right to appeal his decision. The parents appealed the principal's decision to the Superintendent of the Chesterfield Public Schools. The appeal was heard by the Superintendent's designee, who met in person with B.M. and her parents, and reviewed the investigative file prepared by Moore as

well as the written statements of B.M., the male student and the other students involved. Thereafter, the decision to impose a 10-day suspension was determined to be appropriate. This action ensued.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact in the case. See FED. R. CIV. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id.

Hence, summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996).

Nevertheless, a party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Accordingly, the party who bears the burden of proof at trial cannot survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point. Celotex Corp., 477 U.S. at 327.

The summary judgment motion filed by the defendants acknowledges that there are three counts, one challenging the suspension as offensive of the Fourteenth Amendment, one challenging the School Board's policies as offensive of the Fourteenth Amendment, and one alleging that the investigation violated the Fourteenth Amendment. The summary judgment brief lumps all of the counts into a single analytical framework. The treatment given B.M.'s claims in the defendants' brief is cursory.[2]

---

[2] The brief also raises the defense of qualified immunity in a most cursory manner (and in a manner which is inappropriate for the presentation of a qualified immunity defense) and then the brief concludes with an argument that the principal of the school and the Superintendent's designee who heard the appeal to the

Notwithstanding the rather slapdash manner in which the summary judgment issues are briefed by the defendants, it is possible to discern the basic contentions which the defendants make. First, they argue that B.M. was afforded an appropriate disciplinary hearing and that the procedures of the School Board relating to investigations of this sort are constitutionally adequate and that there was no violation of a due process right by anyone.

The defendants rely on Goss v. Lopez, 419 U.S. 565 (1975), wherein the Supreme Court of the United States outlined the procedural protections for the imposition of suspensions for a period of 10 days or less, holding that: "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him, and, if he denies them, an explanation of the evidence the authorities have and the opportunity to present his side of the story." Id. at 581; see also Wofford v. Evans, 390 F.3d 318, 325 (4th Cir. 2004).

The record submitted to support the motion for summary judgment establishes that the procedure used by the School Board satisfies the requirements of Goss, and that the defendants

---

Superintendent had no responsibility because they were not personally involved in the disciplinary hearing and, therefore, could not have violated B.M.'s actions.

followed the requisite procedures. Accordingly, Count I and II clearly fail as a matter of law. In Count III, the Complaint simply asserts, in conclusory form, that the investigation was nothing more than an interrogation in which the student was coerced and pressured into making an admission of the misconduct.[3] The evidence offered in support of summary judgment rather clearly shows that the alleged coercion did not occur.

Given the showing made by the defendants on Counts I, II and III, it became the plaintiffs' burden to raise a triable issue of fact. The response to the motion for summary judgment filed by the plaintiff is, quite simply, inadequate under the law regulating the summary judgment practice in federal court. In the Complaint, B.M. makes conclusory allegations about the unconstitutionality of the policies required to be followed and the policies actually followed by the defendants in conducting their investigation and in suspending her. The Complaint also makes a conclusory allegation about being coerced into giving an admission of misconduct.

Notwithstanding the rather disjointed brief in support of the motion for summary judgment, the record evidence submitted in support of the motion for summary judgment establishes clearly

---

[3] In the brief opposing summary judgment, but not in the Complaint, B.M. asserts that the admissions, both oral and written, which she made, were false. No evidence was tendered to support the assertion in the brief.

that the School Board's policy satisfies the requirements of law; that the policy was followed in the conduct of this investigation; and that there was no coercive conduct by Moore in the conduct of the investigation. Thus, B.M. had the obligation to produce specific facts which establish the essential elements of her claims. Celotex, 477 U.S. at 322. Like any nonmoving party, B.M. may not rest upon the mere allegations of her Complaint. Instead, to survive summary judgment, she must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. B.M. could do that by citing affidavits or by relying on other evidence.[4]

Instead of following appropriate summary judgment practice, B.M.'s response quite simply is a collection of conclusory arguments of counsel that boils down to the assertion that Moore coerced an admission from B.M. which was used as the basis for suspending her. That, of course, is legally insufficient under Celotex and Anderson. The evidentiary record presented in support of summary judgment forecloses any claim upon which a jury reasonably could return a verdict in B.M.'s favor. It was her responsibility to refute the showing made by the defendants. B.M. offered nothing to refute the showing made by the defendants

---

[4] If a party is not prepared to respond to the summary judgment motion, she can ask for additional time in which to collect the evidence to meet the challenges of the contentions in the summary judgment motion.

8

except the reassertion of the conclusory allegations made in the Complaint and the unsupported arguments of counsel. Thus, the undisputed record establishes that there is no triable issue of fact as to Count I, Count II, or Count III, and that no reasonable jury could return a sustainable verdict in B.M.'s favor.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [Docket No. 11] will be granted.

IT IS SO ORDERED.

/s/ REP
Senior United States District Judge

Richmond, Virginia
Date: April 9, 2010